KENJI A. HARRIS *v.* TASHANA HAMILTON
(AC 33731)

Gruendel, Robinson and Schaller, Js.

Argued October 12, 2012—officially released March 12, 2013

*Eric D. Coleman*, for the appellant (plaintiff).

*Tashana A. Hamilton*, pro se, the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, Kenji A. Harris, appeals from the judgment of the trial court granting the defendant, Tashana Hamilton, sole custody of the parties'

minor child and denying his motion for contempt that was filed on March 4, 2011. The plaintiff claims that the trial court (1) violated his federal and state constitutional due process rights by concluding the hearing prior to the plaintiff's completing his case-in-chief, (2) erred in limiting testimony and evidence to matters subsequent to the parties' August 14, 2008 agreement, except as they related to the defendant's credibility, (3) improperly awarded sole custody to the defendant and (4) improperly found that there was no motion for contempt to sustain the court's factual findings. We affirm, in part, and reverse, in part, the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On October 7, 2005, the plaintiff filed a custody application. The parties reached an agreement, which was approved by the court on January 30, 2006, that provided for joint custody of the minor child, primary residence with the defendant and visitation for the plaintiff. After a number of motions were filed by both parties, a guardian ad litem was appointed on May 8, 2006. Over the next two years, the parties filed frequent motions for contempt, orders and custody that required several court orders and court approved agreements to create more specific conditions that would address the issues between the parties. The operative agreement, approved by the court on August 14, 2008, and amended on February 10, 2009, set up routine parenting time for the plaintiff with the minor child every Wednesday afternoon and every other weekend, specified how parenting time exchanges were to occur, required the parties to communicate through Our Family Wizard, an online program, required the parties to recommence with the Families in Transition (mediation) program at the Children's Law Center, allocated holidays and vacations between the parties and

established a procedure for rescheduling parenting time in the case of events.

The defendant filed a postjudgment motion to modify custody on August 26, 2009. The court initially scheduled a three day hearing to commence on September 20, 2010, and to end on September 23, 2010. In addition to the defendant's motion to modify custody, the court also agreed to hear testimony for seven outstanding motions that had been filed by the defendant and two motions that had been filed by the plaintiff.

The plaintiff had not commenced his case-in-chief by the end of September 23, 2010, so two more days, March 28 and 29, 2011, were scheduled to complete testimony. When the hearing recommenced on March 28, the court agreed to hear three additional motions for contempt that had been filed in the interim period between the hearing dates, two motions by the plaintiff and one motion by the defendant. At the end of the day on March 29, the court agreed to schedule two additional days, on May 10 and 17, 2011, to hear testimony. At the end of the day on May 17, however, the court granted the parties an additional half day, which occurred on May 19, 2011, to hear testimony from the guardian ad litem. When the guardian ad litem's testimony had not concluded at the end of the allotted time, the court granted the parties one additional hour, on June 21, 2011, to complete her testimony.

In its memorandum of decision, the court granted the defendant's motion for modification of custody[1] and denied or dismissed all other motions still outstanding.[2]

---

[1] The court also granted the defendant's motion to dismiss the plaintiff's motion for contempt, filed August 13, 2010.

[2] The court noted that several motions had either been resolved during the trial or were not adequately argued and, thus, were not subject to the order. It stated, however, that the "decision . . . is meant to resolve all motions pending as of the time of the hearing . . . ."

It found that there had been a material change in circumstances that warranted a modification of the custody orders, including "the plaintiff's failure to employ the scheduling features of Our Family Wizard despite court orders to do so and his inability to consider the minor child's best interests and needs in making his parental decisions . . . ." It further found that it was in the best interests of the minor child to change the custody orders previously issued by the court and for "the defendant to be responsible for the scheduling of [the minor child's] activities both academic and recreational as well as taking responsibility for the child's physical and mental health . . . ." This appeal followed. Additional relevant facts will be set forth as necessary.

I

The plaintiff first claims that the court violated his federal and state constitutional due process rights when it concluded the hearing before the completion of his case-in-chief. He maintains that his testimony and the testimony of additional witnesses, as well as the introduction of photographs of himself with the minor child, and Our Family Wizard communications would have called into question the defendant's present fitness to be the custodial parent of the minor child. We conclude that the plaintiff did not preserve his claim at the hearing and did not seek review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or under the plain error doctrine. See Practice Book § 60-5. Accordingly, we decline to address this unpreserved claim.

The following additional facts and procedural history are necessary to resolve this claim. At the end of the fifth day of the hearing, on March 29, 2011, the court inquired as to how much time the parties would need to complete their cases. The defendant's counsel indicated that he did not have any additional witnesses to testify with the exception of the guardian ad litem, Rhonda

Morra, whom he intended to call as a rebuttal witness. The plaintiff's attorney indicated that he had at least six witnesses that he wanted to testify and that the two additional days granted by the court should be sufficient. The court noted that it would not definitely limit testimony to the additional days but that its inclination was not to continue the case any more days.

When the hearing resumed on May 10, 2011, the plaintiff's counsel indicated that he had not completed his cross-examination of the defendant, but that he desired to call two police officers to testify in his case-in-chief. The court allowed him to do so. After the testimony of the police officers, the plaintiff's counsel continued his cross-examination of the defendant, examined the defendant's significant other, then further resumed his cross-examination of the defendant.

On May 17, 2011, the plaintiff's counsel completed his cross-examination of the defendant. The testimony of the guardian ad litem was interrupted by the testimony of Sharon Vance, a family relations officer, so the court allowed additional time on May 19, 2011, and June 21, 2011, to hear only her testimony. When the plaintiff's counsel asked on May 17, 2011, if the plaintiff could testify, the court refused.[3] The plaintiff raised the

---

[3] The colloquy was as follows:

"The Court: All right. I will authorize the gentleman to go to [f]amily—[c]aseflow and get a half day only for the purposes of the guardian ad litem testifying. I'm not going to allow any other witnesses, including rebuttal witnesses.

"[The Plaintiff's Counsel]: Would you allow [the plaintiff] to testify?

"The Court: No, I will not.

"[The Plaintiff's Counsel]: Okay.

"The Court: You had one day and you manage it the way you want to. I will—I—I want to hear the guardian's testimony.

* * *

"[The Plaintiff's Counsel]: Before we recess, Your Honor—

"The Court: Sure? Oh, we have the camp issue.

"[The Defendant's Counsel]: Yes.

"[The Plaintiff's Counsel]: There are some—there are some issues that need to be—particularly with respect to motions for contempt that [the plaintiff] has to respond to.

issue in his written closing argument, asserting that the court had concluded the hearing on June 21, 2011, without allowing the plaintiff to testify and to offer evidence of photographs of the minor child or communications from Our Family Wizard in support of allegations of two of the plaintiff's motions. For the first time on appeal, the plaintiff identifies two additional witnesses who would have testified about the defendant's behavior.

"[I]f a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding*, [supra, 213 Conn. 239–40]." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 324, 977 A.2d 209 (2009).[4] Furthermore, "it is not appropriate to engage in a level of review that is not requested." (Internal quotation marks omitted.) *Bruno* v. *Geller*, 136 Conn. App. 707, 731, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

In neither instance when he raised the issue with the court did the plaintiff argue that ending the hearing was a denial of his due process rights. Moreover, the argument that two additional witnesses would have

"The Court: I said one day. I heard from him ad nauseum. I heard from both of them ad nauseum. I can't believe that there's any other information that I'm going to get from them that I haven't already heard.

"[The Plaintiff's Counsel]: At least the denial of . . .

"The Court: I presume the denial.

"[The Plaintiff's Counsel]: Okay. Thank you.

[4] In order to receive review under *Golding*, the plaintiff need not explicitly refer to the doctrine. Rather, "a party must affirmatively request review pursuant to *Golding* in its main brief." *State* v. *Elson*, 125 Conn. App. 328, 346, 9 A.3d 731 (2010), cert. granted, 300 Conn. 904, 12 A.3d 572 (2011). "[W]e . . . define an affirmative request for review pursuant to *Golding* as . . . an explicit assertion and analysis in a party's main brief that explains that, if the reviewing court deems a particular claim to be unpreserved, that claim nonetheless is reviewable on appeal because the record is adequate to review the claim and it is a claim of constitutional magnitude." Id., 354–55.

supported the plaintiff's case was not raised before the trial court. Thus, we conclude that the plaintiff did not preserve his constitutional claim of due process.

In his main brief, the plaintiff does not state that an extraordinary level of review is requested, does not refer to *Golding* either in name or in substance and does not address the issue of the adequacy of the record. The plaintiff does not present an analysis that, if the claim was not properly preserved, it nevertheless should be reviewed. See *State* v. *Elson*, 125 Conn. App. 328, 356, 9 A.3d 731 (2010), cert. granted, 300 Conn. 904, 12 A.3d 572 (2011).[5] Moreover, the plaintiff did not

[5] We note that even if we could have reached the plaintiff's claim, he would not have prevailed as he could not have satisfied the third prong of *Golding*. "A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. . . . It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose property rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner. . . . Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained." (Citations omitted; internal quotation marks omitted.) *Szot* v. *Szot*, 41 Conn. App. 238, 241–42, 674 A.2d 1384 (1996). "[A] party's constitutionally protected right to present evidence [however] is not unbounded." *Eilers* v. *Eilers*, 89 Conn. App. 210, 219, 873 A.2d 185 (2005). "To the contrary, we previously have determined that the court reasonably may limit the time allowed for an evidentiary hearing." Id., 218.

Our careful review of the record reveals that that court gave great latitude to the plaintiff. It allowed the plaintiff to take witnesses out of order and clearly indicated on March 29, that the plaintiff would have two days to present his case when the hearing resumed in May. The plaintiff was given a reasonable opportunity to testify, to enter evidence and to call other witnesses. He chose to spend a full day of the hearing presenting testimony on his motion for contempt. Although the plaintiff did not testify in his case-in-chief or call the two additional witnesses that he now argues were important for his case, he had an opportunity to do so. See *Bruno* v. *Bruno*, 132 Conn. App. 339, 351, 31 A.3d 860 (2011) (no violation of due process

request that we review this claim pursuant to the plain error doctrine nor did he adequately brief the claim. See *Pestey* v. *Cushman*, 259 Conn. 345, 373, 788 A.2d 496 (2002). Accordingly, we decline to review this claim.

## II

The plaintiff next claims that the court erred in limiting testimony and evidence to matters subsequent to the parties' August 14, 2008 agreement, except as they related to the defendant's credibility. He argues that the factors to be considered when determining the best interests of the child contemplate the past behavior of the parties and that the court abused its discretion by limiting testimony to events after the August 14, 2008 agreement. We disagree.

The standard of review of an evidentiary challenge is well established. "We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "The trial court has wide discretion in determining the relevancy of evidence . . . and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Golodner*, 305 Conn. 330, 347, 46 A.3d 71 (2012).

The court first addressed the admissibility of testimony regarding events prior to the August 14, 2008 agreement on the first day of the hearing.[6] When the plaintiff's counsel attempted to question the plaintiff regarding events prior to 2008, the defendant objected,

rights in ordering defendant to pay expert witness fees where defendant had opportunity to be heard but failed to offer evidence).

[6] The parties and the court apparently discussed this issue prior to trial, but we do not have any transcript reflecting the discussion or order. Accordingly, the first time that the issue was raised on the record before us was the first day of trial.

arguing that the questioning did not comply with a previous court order to limit testimony to events after August 14, 2008. The court agreed stating "we have an agreement entered in [2008], establishing a joint custody order. So, unless there's some . . . clear proffer that . . . there's been . . . an effort on the part of the [the defendant] to deny [the plaintiff] contact, and that . . . those efforts even predate the [2008] order, I'm not going to allow it. If there's . . . blocking now, and then, you can show through a proffer that the blocking has a long history, I'll allow that. But other than that, my order stands." The court subsequently allowed testimony and evidence regarding a physical altercation between the parties in January, 2007, and a department of children and families case referral for an incident that occurred in June, 2008. The court also allowed the plaintiff's counsel to cross-examine the defendant on her credibility, specifically referring to orders and documents that she had fabricated prior to 2008 in order to prevent the plaintiff from having access to and information about the minor child and to induce the court to order him to pay childcare costs.

The guardian ad litem also testified about her impressions of the parties both before and after the August 14, 2008 agreement. Specifically, she noted that the defendant "has made progress in parenting issues. When I became involved, she was obviously very angry, very hostile, and was of the position that . . . she could do whatever she needed to do to protect her daughter. At that point, [the plaintiff] was frustrated with the . . . legal process, as well as the process of a [guardian ad litem], but was . . . more willing to enter most agreements to get this moving, so that he could have access with his daughter. Over the past five years, I believe that [the defendant] has made strides. She's gone to the [mediation] program. She's complied, as far as I'm concerned, with the Our Family Wizard

requirement by posting information. She has taken a look at herself individually, as well as, as part of a parenting unit and has made changes that I believe benefit [the minor child]. [The plaintiff], in my opinion, has become more entrenched in his position . . . because of his lack of trust of [the defendant], and goes through the motions, as far as the [mediation] program, but doesn't reach agreements, or actually refuses to even consider reaching agreements." She continued, noting that "[t]he end result is that five years ago, it was my position that [the defendant] was the . . . parent that was standing in the way of the parties coparenting their child. My position today is that [the plaintiff] is . . . the parent . . . standing in the way of the parties coparenting . . . ."

In its memorandum of decision, the court referenced some of the testimony, noting that the "plaintiff submitted a number of pieces of evidence and elicited the defendant's testimony regarding her past attempts to fabricate evidence and misrepresent events to the court. She admitted those past lies and forgeries and did not attempt to minimize the seriousness of those facts." It also noted that the "plaintiff argues strenuously in his closing argument that all of the defendant's former bad acts should not be forgotten and her present behavior must be viewed through the microscope of that past behavior. His counsel just does not believe a word that she utters. The plaintiff has also formed a very firm opinion that the court-appointed [guardian ad litem] is biased against him. . . . The court does not share the plaintiff's view and can find no convincing evidence to support his view. . . . The court appreciates the information and perspective that a [guardian ad litem] can offer in difficult cases generally; this particular [guardian ad litem] has done considerable work with these parties and her ward for a very long time . . . ."

General Statutes § 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation. When making that determination, however, a court must satisfy two requirements. First, "modification of a custody award [must] be based upon either a material change of circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child." (Internal quotation marks omitted.) *Kelly* v. *Kelly*, 54 Conn. App. 50, 55, 732 A.2d 808 (1999). Second, "the court shall consider the best interests of the child, and in doing so may consider" several factors. General Statutes § 46b-56 (c).

"Before a court may modify a custody order, it must find that there has been a material change in circumstance since the prior order of the court, but the ultimate test is the best interests of the child." (Internal quotation marks omitted.) *Hibbard* v. *Hibbard*, 139 Conn. App. 10, 21, 55 A.3d 301 (2012). When considering the best interests of the child, § 46b-56 (c) identifies several factors that the court can consider in making its determination, including "the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders . . . ." General Statutes § 46b-56 (c) (6). Our Supreme Court has also determined that other factors the court may consider include parental character as it relates to the wilful disobedience of court-ordered visitation; see *Hall* v. *Hall*, 186 Conn. 118, 124, 439 A.2d 447 (1982); credibility, and past behavior as it relates to parenting ability. A. Rutkin et al., 8 Connecticut Practice Series: Family Law and Practice with Forms (2010) § 42:28, pp. 570–71. "[O]nce a material change in circumstances has been shown, the court may then consider past conduct; not because a party's

parental fitness in the past is relevant per se, but because that past conduct bears on the present character of the parent and suitability of that parent as a custodian of the child." Id., § 44:5, p. 665.

Because the decision as to whether a modification is warranted is limited to circumstances that have occurred since the last order, the court properly limited evidence to events subsequent to the August 14, 2008 agreement when making that determination. Turning to the court's determinations on the best interests of the child, the record does not support the plaintiff's assertions that the court only allowed evidence of events that occurred prior to the August 14, 2008 agreement as it related to the defendant's credibility.

On the first day of the hearing, the court indicated that it would allow evidence of the defendant's blocking the minor child's access to the plaintiff occurring prior to August 18, 2008. It then heard testimony about the guardian ad litem's impressions of the parties since she became involved in 2006, a department of children and families' referral from June, 2008, and a physical altercation that occurred between the parties in January, 2007. Additionally, the court not only allowed the plaintiff to cross-examine the defendant about fabricated court orders and documents submitted to the court, but also allowed the documents to be admitted as full exhibits. While it may not have been as extensive as the plaintiff desired, the record reflects that the court allowed testimony and evidence of relevant events prior to the August 14, 2008 agreement when considering the best interests of the child. Moreover, the plaintiff has not identified which events prior to the August 14, 2008 agreement were not allowed and how the failure to allow that evidence prejudiced him. Accordingly, we conclude that the court did not abuse its discretion.

## III

The plaintiff claims that the court erred in awarding sole custody to the defendant because the factual findings do not support the court's conclusion that there was a material change in circumstances. The plaintiff first challenges the court's factual findings that he is unable to consider the best interests of the child, that he failed to use the scheduling features of Our Family Wizard and that the parties failed to engage in coparenting counseling. He also maintains that even if those facts were true, they do not support the court's legal conclusion that there was a material change in circumstances. We are not persuaded.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . [W]hether the best interests of the [child] dictate a change . . . is left to the broad discretion of the trial court. . . . A mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . When the factual basis of the trial court's decision [also] is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision . . . are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation

marks omitted.) *Hibbard* v. *Hibbard*, supra, 139 Conn. App. 21–22.

The following additional facts are relevant to our review. Over the nine days of the hearing, the court heard testimony from seven witnesses, including the plaintiff and the defendant, regarding conflicts over parenting time and exchanges. The court also heard testimony about the parties' use of Our Family Wizard, their failure to complete court-ordered mediation and their disputes over activities, appointments and tutoring for the minor child. Four police officers testified about allegations that the defendant had made against the plaintiff as well as altercations that had occurred. Two social workers from the department of children and families testified about the mostly unsubstantiated referrals that the defendant had made against the plaintiff. The minor child's dance teacher and third grade teacher, as well as the sports and recreation director at the YMCA where she plays basketball, also testified regarding the parties' involvement in the minor child's educational and extracurricular activities. Additionally, the parties submitted police reports, e-mail and log-in information regarding Our Family Wizard, as well as employment and financial information. The guardian ad litem and the family relations officer also submitted their recommendations.

Based on all of the evidence and testimony before it, the court found that "both parents were less than completely credible in their testimony. The plaintiff was not being truthful to the court when he testified that his girlfriend, Monique Biggs, never responded for him to e-mails from the defendant via Our Family Wizard . . . . The evidence was very clear that Ms. Biggs did log on to the site as the plaintiff on a number of occasions including one time when the plaintiff was actually in the courtroom participating in this hearing. . . . The court also found his testimony about why the parties

were terminated from the [mediation program] not to be credible."

With respect to the defendant, the court stated that the "defendant's testimony on a number of issues also was very troubling to the court." It was troubled by the order of events that prevented the defendant from returning the minor child to the plaintiff on July 16, 2010, noting that the defendant only submitted discharge notes from her hospital visits, that her significant other did not know that the minor child was scheduled to be with the plaintiff on July 16, and that the defendant and the child attended a wedding ceremony on July 18, where the child was the flower girl. The court stated, "[i]t may have all just worked out that way, but the court finds the events troubling given the history of the parties and their ongoing exchange issues."

The court further stated that notwithstanding the defendant's actions, "she seems to have made a reasonable effort to improve her relations with the plaintiff for the benefit of the minor child since the August, 2008 orders. The plaintiff has not made such an effort. In the last almost three years, the defendant has made a meaningful and timely effort to communicate with the plaintiff via [Our Family Wizard] as ordered by the court. She has also done much better than the plaintiff in supporting [the minor child's] activities as arranged by the father than he has done for the activities arranged by the mother. . . . His response, on the other hand, is usually not to respond and then complain when she makes plans without his input. The plaintiff has made it clear in his communications with the defendant, the [guardian ad litem] and the [f]amily [s]ervices evaluator that he did not want his parenting time to be used for anything that he did not plan. Such a position is not what is necessarily best for the child and is not the attitude of a cooperative parent with joint legal custody."

In ordering that sole custody be granted to the defendant, the court noted that "[b]oth the guardian ad litem and [f]amily [s]ervices have recommended the continuation of a joint legal custody order with some degree of limitation such as final decision making authority. The court, however, cannot condone the pretense that these parents can share custody if that charade will continue to cause psychological harm to their child. As this decision has attempted to portray, neither parent is without serious flaws, but at this time the defendant is better able to carry out the orders of the court. [The minor child] is still rather young and there is no reason to think that the plaintiff cannot, with time and effort, rehabilitate his parental role sufficiently to seek a return to joint custody in the future. It just is not working at this time."

Based on the nine days of testimony and exhibits submitted by both parties, we conclude that there was ample evidence to support the court's factual findings, including the plaintiff's failure to properly use Our Family Wizard, the plaintiff's insistence that he could do what he wanted with the minor child during his parenting time, the plaintiff's failure to provide timely notification when he was taking the child out of town, the plaintiff's unwillingness to engage in good faith negotiations during mediation, the plaintiff's failure to bring the minor child to dance class during his parenting time and the plaintiff's unwillingness to make accommodations. Given the extensive testimony and exhibits, the court had before it evidence on which it could base its findings and, thus, was not clearly erroneous in its findings of facts.

Moreover, the court observed the parties and witnesses, weighed the evidence and assessed credibility, all actions appropriately within the realm of the court. See *In re Aziza S.-B.*, 138 Conn. App. 639, 658–59, 53 A.3d 1001 (2012) ("[i]t is the exclusive province of the

trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony" [internal quotation marks omitted]). Based on its factual findings and the substantial evidence to support such findings, the court did not abuse its discretion in determining that the actions of the parties represented a material change in circumstances that warranted granting the defendant sole custody of the minor child.

## IV

Finally, the plaintiff claims that the court improperly denied his motion for contempt that was filed on March 4, 2011. Specifically, he argues that the court improperly denied the motion after making factual findings that the defendant had wilfully disobeyed a clear court order when she interfered with the plaintiff's parenting time during the February, 2011 school vacation. We agree with the plaintiff.

"The abuse of discretion standard applies to a trial court's decision on a motion for contempt. . . . A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order." (Citation omitted; internal quotation marks omitted.) *Gravius* v. *Klein*, 123 Conn. App. 743, 748, 3 A.3d 950 (2010).

When the hearing resumed on March 28, 2011, the court indicated that it would hear additional motions for contempt that had been filed by the parties since the last day of the hearing. It agreed to hear the plaintiff's motion for contempt, filed on March 4, 2011, which alleged, among other things, that the defendant had interfered with the plaintiff's parenting time on February 24, 2011. The plaintiff's counsel noted, and the court agreed, that paragraph six of the motion alleged an

interference with parenting time by the defendant on February 24, 2011.

The plaintiff called two witnesses, Biggs and Latasha Johnson, a friend of Biggs, to testify regarding an incident that occurred between the defendant and Biggs on February 24, when Biggs attempted to pick up the minor child from dance practice that day. The plaintiff and the defendant also testified about the incident that occurred on February 24.

In its memorandum of decision, the court stated that the defendant's "account of why she interfered with Ms. Biggs picking the child up from dance class during the February, 2011 school vacation lacked credibility and seemed to reflect more her dislike of the plaintiff's significant other than any allegations that Ms. Biggs had been drinking." Accordingly, the court found that the "defendant interfered with the plaintiff's parenting access to the minor child by not allowing the child to be picked up from her dance class by the plaintiff's significant other during the February school vacation in 2011 causing the minor child to experience distress and inconvenience to the plaintiff. Her actions were a wilful disobedience of a clear court order but the court cannot find a motion filed by the plaintiff addressing said behavior in the court file . . . ." The court subsequently denied the plaintiff's motion for contempt.

The record shows that when the hearing resumed on March 28, 2011, the court agreed to hear the plaintiff's motion for contempt that had been filed on March 4, 2011, the plaintiff's counsel specifically directed the court's attention to the paragraph that related to the allegations that the defendant interfered with the plaintiff's parenting time on February 24, 2011, and the court heard testimony from four witnesses, including the plaintiff and the defendant, regarding the events that

took place on February 24. Nevertheless, the court concluded that there was no motion addressing the February 24, 2011 incident and denied the plaintiff's motion for contempt. Such actions were an abuse of discretion as there was a pending motion before the court, the plaintiff specifically directed the court's attention to the specific allegation, there was evidence supporting the plaintiff's allegations and the court made factual findings that the defendant had wilfully violated a court order.

The judgment is reversed only with respect to the plaintiff's March 4, 2011 motion for contempt and the case is remanded for further proceedings in accordance with this opinion on that motion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.