******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LETICIA CLOUGHERTY *v.* KEVIN CLOUGHERTY
(AC 36886)
(AC 36887)

Lavine, Beach and Mihalakos, Js.

*Argued November 18, 2015—officially released February 9, 2016*

(Appeal from Superior Court, judicial district of New London, Regional Family Trial Docket at Middletown, Gordon, J. [dissolution judgment]; Adelman, J. [motion to modify custody, motion for counsel fees].)

*William H. Cashman*, for the appellant-appellee (defendant).

*Kenneth J. McDonnell*, for the appellee-appellant (plaintiff).

*Paige S. Quilliam*, guardian ad litem, for the minor child.

*Opinion*

LAVINE, J. The defendant, Kevin Clougherty, appeals from the judgment of the trial court denying his postdissolution motion to modify the court's custody order regarding the parties' minor child. The defendant claims that the trial court abused its discretion by denying his motion to modify physical custody. The plaintiff, Leticia Clougherty, cross appeals from the judgment of the trial court denying her motion for additional attorney's fees. We affirm the judgment of the trial court.

The following undisputed facts found by the court, and procedural history, are relevant to this appeal. The parties were married in Texas in 2003. Originally, the plaintiff was from Texas, and the defendant was from Massachusetts. They moved to Connecticut in 2004 because the defendant had a job opportunity in this state. The plaintiff worked for her family's business, Aztec Roofing and Sheet Metal Corporation (Aztec Roofing), in Houston, Texas, and continued to do so when the parties moved to Connecticut. She traveled back and forth to Houston on a regular basis during the marriage. Her travel became a major issue between her and the defendant. The couple had a son in 2006. By June, 2008, the marriage had broken down irretrievably, and the plaintiff commenced an action for dissolution of marriage. The plaintiff wanted to return to Houston with the child because of her family and employment ties to Texas, but the defendant wanted the child to remain in Connecticut.

The court, *Gordon, J.*, granted the judgment of dissolution on December 15, 2009. As this court recounted in a previous appeal in this case: "The court also awarded the parties joint legal custody and shared physical custody of their child. In doing so, the court observed that living in Connecticut had made the plaintiff physically and emotionally ill because her life was completely integrated in Texas, where she enjoyed 'a rich and wonderful life.' The court found that the plaintiff lacked a job or any significant ties in Connecticut, and had not thrived living away from her family of origin and the family business, which provided her with the identity that she needed. In discussing where the child primarily would reside, the court determined that the plaintiff was 'doing a little bit better of a job as a parent' than the defendant at that time but not in any great qualitative sense. The court expressed concern over the child's 'failure to thrive' during the disintegration of the parties' relationship. The court also observed that the child had a close relationship with the plaintiff's large, extended family in Texas, which resulted in his experiencing a richer and more vivacious life there than in Connecticut. The court, therefore, concluded that it was in the child's best interest to allow the plaintiff to return to Texas with the child. Accordingly, the court ordered the parties to maintain two residences for the child,

one in Texas with the plaintiff and the other in Connecticut with the defendant, and it set forth a visitation schedule for the defendant." *Clougherty* v. *Clougherty*, 131 Conn. App. 270, 271–72, 26 A.3d 704, cert. denied, 302 Conn. 948, 31 A.3d 383 (2011).

"[T]he defendant filed (1) a motion seeking to have a supplemental examination of the plaintiff and her family in Texas, (2) a motion to clarify the judgment with respect to various terms of the visitation schedule, and (3) a motion to open the judgment." Id., 272. Judge Gordon denied all of the motions, and the defendant appealed claiming that the trial court erred in allowing the plaintiff to relocate to Texas with the child. Id. This court affirmed the judgment.

A little more than five months later, on February 23, 2012, the defendant filed the motion for modification of custody at issue in the present appeal, claiming that there had been a material change in circumstances and that it was in the best interests of the child to modify the custody order. On July 12, 2012, the court, *Shluger*, *J.*, ruled on a number of motions filed by the plaintiff. Judge Shluger awarded her $15,000 in attorney's fees to defend the defendant's motion for modification of custody. On December 12, 2013, the plaintiff moved for additional attorney's fees, stating that she had exhausted the initial award of $15,000. She filed an affidavit of attorney's fees on April 14, 2014, seeking an additional $22,003.87.

The court, *Adelman*, *J.*, held a hearing on the defendant's motion for modification and the plaintiff's motion for additional attorney's fees on April 9 through April 11, 2014. The court heard testimony from both parties, a friend and former coworker of the defendant in Texas, and the guardian ad litem, Attorney Susan Perrin Geenty.[1] The parties presented evidence, including copies of numerous e-mail and text messages between them, and a written psychological evaluation prepared by Keith Roeder, doctor of psychology, in June, 2013, that updated Roeder's initial psychological evaluation completed in 2009. The court issued a memorandum of decision on May 5, 2014, finding that there was no material change in circumstances warranting a change of physical custody, and therefore denied the defendant's motion to modify custody. The court also denied the plaintiff's December 12, 2013 motion for additional attorney's fees. The defendant's appeal and the plaintiff's cross appeal followed and were consolidated. Additional facts will be set forth as necessary.

I

The defendant claims that the court abused its discretion when denying his postdissolution motion to modify custody in finding that no material change in circumstances had occurred since the dissolution of the marriage, arguing that the child is not thriving with the

plaintiff, and suggesting that they are no longer enjoying a "rich and wonderful life" in Texas. He sought to demonstrate this in the trial court by providing a litany of the plaintiff's economic misfortunes and examples of when she purportedly had been inattentive as a parent to the child's welfare and academic needs. He raises the same arguments on appeal.

The following additional facts are relevant to this claim. In regard to the plaintiff's financial situation, at the time of the dissolution, she worked for her family's business, Aztec Roofing, which then was in chapter 11 bankruptcy proceedings. After the dissolution, the company converted from a chapter 11 to a chapter 7 bankruptcy. This resulted in Aztec Roofing's dissolution. Judge Adelman determined that this was not a material change in circumstances, noting that Judge Gordon had recognized at the marriage dissolution trial that the business already was in serious financial trouble. Judge Adelman also found that since the dissolution judgment, which contained the initial custody order, the plaintiff had opened her own company, Elias Commercial Roofing Systems.

The defendant presented evidence that since the judgment of dissolution the plaintiff had changed residences after losing a home in foreclosure and no longer was living with her brother, who Judge Gordon found was a positive influence in the child's life. The defendant argued that each of these facts demonstrated a material change in circumstances from the initial custody order. The court noted that "[t]aking such items as independent factors gives the defendant a false sense of [Judge Gordon's] rationale in providing the minor child with two primary residences . . . [as the initial custody order] was not based on Aztec Roofing Company, the house in Houston or [the brother]. Rather, it was based on the court's understanding that the plaintiff was terribly unhappy living in Connecticut and that she had virtually no life in Connecticut outside of her family and her home. The plaintiff had never truly left Texas. The [dissolution] court made this abundantly clear when Judge Gordon wrote: 'I do think that I have to say that for Ms. Clougherty and [the child], it's probably in the best interests of the child to let her go back to Texas . . . [b]ecause I have a child and a mother who have not thrived living away from the thing that gives her the identity that she needs and it's a rich and wonderful life in Texas."

The defendant presented at the hearing before Judge Adelman, and reiterates in his brief on appeal, numerous allegations that the plaintiff was financially irresponsible and inattentive to the child's physical needs. The court determined that "[d]espite his claims, there is no proof that the plaintiff and the minor child are homeless, going without food, or that the child's physical needs are not adequately being met." Although the

defendant attempted to argue that his home was larger and in a nicer neighborhood, the court stated that this was "somewhat offensive," and noted that the "Connecticut courts do not award custody of minor children to the wealthier parent . . . ." See, e.g., *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 661–62, 420 A.2d 875 (1979) ("[t]he parent's loss of custody should not . . . be premised solely on tangible material benefits to the child at the expense of the intangible, non-material advantages which a parent's care can provide even when the parent has only limited financial resources" [internal quotation marks omitted]).

The defendant also alleged that there was a material change in circumstances due to the academic needs of the child, who had begun to attend school. The court concluded that this did not constitute a material change in circumstances, as Judge Gordon's custody order provided adjustments to the parental access schedule in consideration that the child would grow up and attend school.[2]

The defendant claimed that the child has not thrived in Texas because the plaintiff has been inattentive to his academic needs. The defendant alleged that the child was often tardy to school, and the plaintiff neglected to help the child with homework and other academic matters. The guardian ad litem testified that the defendant was more attentive to the academic needs of the child and recommended that the plaintiff improve in this area. However, she also testified that the child's current school was very good, and the child was doing well. The court determined that the child's report card did not show that he was struggling in any graded subjects. The report card also showed his attendance record for the first three quarters of the 2013-14 school year. Although the child did arrive late on four days in each of the first two quarters of the 2013-14 school year and had one unexcused absence, he did not arrive late or miss school in the third quarter.

The court also addressed the difficulties of the parties in managing their coparenting responsibilities, which is relevant on appeal because the defendant claims that a material change in circumstances occurred since the dissolution because he is now a "better" parent than the plaintiff.[3] The court determined that the plaintiff and the defendant did not communicate properly, nor coparent in a reasonably effective manner. The court recognized that the plaintiff bears some of the blame in the problems with coparenting, stating that "she often fails to communicate with the defendant and even has provided him with incorrect or false information." It noted that the defendant "[was] certainly the more attentive parent and more than compensates for any inadequacies on the part of the plaintiff. It is quite clear that the dual primary residences has only worked so well because of the defendant's complete commitment

to seeing his son despite the cost in travel related expenses, maintaining a second residence in Houston, and the physical toll of going back and forth between Texas and Connecticut so often." The court noted further that much of the child's academic success was likely due to the defendant's committed efforts and involvement in the child's life.

However, the court also noted the "truly horrible behavior of the defendant in the years between the dissolution decree and the [time of the hearing]." The defendant admitted, and apologized at the hearing, that he tried to intimidate the plaintiff to accede to his custodial demands. He hired a former Federal Bureau of Investigation (FBI) agent who on one occasion threatened the plaintiff with criminal action just moments after she brought the child to the defendant for visitation. He hired the same FBI agent to contact the creditors of the failed family business and encourage them to reopen the bankruptcy proceedings in hopes of exacerbating the plaintiff's financial difficulties. The defendant's aggressive behavior toward the plaintiff was a substantial factor for why the guardian ad litem and Roeder both recommended that the court not alter the existing custody arrangement. The court noted that, although the defendant has obeyed the court's order, "[t]his behavior was prompted by the defendant's inability to accept the judgment of the court even after his unsuccessful appeal" and "show[s] his efforts to totally undermine the plaintiff—the minor child's mother."

The court further found that the "[guardian ad litem] has very serious concerns about the future if the court should order the minor child to live primarily in Connecticut. She said with little hesitancy or qualification that if the child were to return to Connecticut, the defendant would destroy the plaintiff and her role as the child's mother." The court recognized that the plaintiff must heed the guardian ad litem's and Roeder's recommendations that she be more attentive, but also noted that the plaintiff was dealing with "the demands on a single mother who is also running a business . . . ." Overall, the court concluded that, although the plaintiff exhibited obvious shortcomings,[4] "it is hardly grounds to make major changes to the custodial orders." The court recognized that "[b]oth parties have demonstrated parental behavior that is not in the best interests of the child," but ultimately found that "[t]here have been no significant changes in circumstances since the filing of the dissolution judgment on December 15, 2009." The defendant claims that this represents an abuse of discretion.

The standard of review in domestic relations cases is well established. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the

facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action . . . . Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . ." (Internal quotation marks omitted.) *Coury* v. *Coury*, 161 Conn. App. 271, 281, A.3d (2015). "A mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Lane* v. *Lane*, 64 Conn. App. 255, 257, 779 A.2d 859 (2001).

"General Statutes § 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation. When making that determination, however, a court must satisfy two requirements. First, 'modification of a custody award must be based upon either *a material change [in] circumstances which alters the court's finding of the best interests of the child . . .* or a finding that the custody order sought to be modified was not based upon the best interests of the child.' . . . Second, 'the court shall consider the best interests of the child and in doing so may consider' several factors. General Statutes § 46b-56 (c).[5]" (Citation omitted; emphasis added; footnote added.) *Harris* v. *Hamilton*, 141 Conn. App. 208, 219, 61 A.3d 542 (2013). "Before a court may modify a custody order, it must find that there has been a *material* change in circumstances since the prior order of the court, but the ultimate test is the best interests of the child." (Emphasis added; internal quotation marks omitted.) *Hibbard* v. *Hibbard*, 139 Conn. App. 10, 21, 55 A.3d 301 (2012). "These requirements are based on the interest in finality of judgments . . . and the family's need for stability." (Citation omitted.) *Denardo* v. *Bergamo*, 272 Conn. 500, 513, 863 A.2d 686 (2005). "The burden of proving a change to be in the best interest of the child rests on the party seeking the change." (Internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 506 n.6, 72 A.3d 367 (2013).

Not all changes occurring in the time between the prior custody order and the motion for modification are material. See *Simons* v. *Simons*, 172 Conn. 341, 344, 374 A.2d 1040 (1977). "Although there are no bright-line rules for determining when a material change in circumstances warranting the modification of custody has occurred, there are several relevant considerations, including whether . . . the change was not known or reasonably anticipated when the order was entered, and the change affects the child's well-being in a meaningful way." 27C C.J.S. 255, Divorce § 1053 n.6 (2005).

In reviewing the record, we conclude that the court did not abuse its discretion in determining that there has not been a material change in circumstances since the dissolution of the marriage. The dissolution court found that the plaintiff did not have any connection to Connecticut and that it was in the best interests of the child for the plaintiff to return to Texas where they both could thrive and enjoy a "rich and wonderful life" surrounded by the plaintiff's extended family. To prevail on his motion to modify custody, the defendant had to do more than list every assertedly detrimental change in the parties' and child's lives since the judgment of dissolution. He had to demonstrate that a material change in circumstances occurred that altered the court's initial finding that it was in the best interests of the child to live in Texas. See *Kelly* v. *Kelly*, 54 Conn. App. 51, 55, 732 A.2d 808 (1999). On appeal, he reiterates a list of circumstances that he believes have changed, which we will now review, but he fails to demonstrate how the court abused its discretion in determining that they did not alter the finding that it is in the child's best interests to live in Texas with the plaintiff.

We first turn to the defendant's assertion that a material change in circumstances existed because of the plaintiff's financial issues. We conclude the court did not abuse its discretion in determining that the failure of the family business was not a material change in circumstances. The defendant failed to demonstrate how the failure of the family business altered the dissolution court's finding that it was in the child's best interests to have his primary residence in Texas with the plaintiff. Judge Adelman found that the child's physical needs were being met and the child was doing well in school there.

The defendant contends that the court misunderstood why he entered evidence comparing his financial situation to that of the plaintiff, arguing that it was not to show that his greater financial position entitles him to custody of the child, but rather to demonstrate that the plaintiff has been financially irresponsible. He asserts that the plaintiff's financial issues have negatively affected the child's welfare. Regardless of the cause of the plaintiff's economic misfortunes, the court determined that the child's physical needs were being met under the existing custody order.

We next turn to the defendant's arguments that there was a material change in circumstances due to the child's academic needs. In regard to the child's entering elementary school, the court did not abuse its discretion in determining that this was not a material change in circumstances. At the time of dissolution, Judge Gordon contemplated that the child would grow up and attend school in the state of his primary residence. Furthermore, Judge Adelman granted the defendant's motion to modify visitation, adjusting the time the defendant

has with the child to account for the child's attending school.

The defendant also argues that the court abused its discretion by not finding a material change in circumstances because the child is struggling in school due to the plaintiff's inattentiveness, and therefore he is not thriving in Texas. The argument fails because the record supports the court's determination that the child was doing well in school. Even if one assumes much of the child's academic success was due to the defendant's efforts, the joint custody order contemplated that both parents would be involved in the child's life and contribute to his welfare. The fact that the child was doing well in school in Texas suggests that the custody order was working as intended in this respect. It was not an abuse of discretion for Judge Adelman to determine that there was no material change in circumstances regarding the child's academic performance.

As to the plaintiff's parenting abilities, the court found that, although the plaintiff had been inattentive in some instances as a parent, "[m]any of [the defendant's] allegations speak to why he considers himself to be a better candidate of [the child's] physical custody, rather than to the changes in circumstances." The defendant has pursued the same course on appeal, emphasizing that Judge Gordon stated that, at the time of the dissolution, "[the plaintiff] is doing a little better of a job as a parent than [the defendant] . . . ." The defendant insists that there has been a material change in circumstances because he is now the better parent, which he sums up with an intemperate assertion in his brief that "[the plaintiff] was a disaster relative to attending to the minor child's health, education, and welfare." As noted, his brief reiterates a litany of allegations about the plaintiff's failings as a parent that he testified to at trial, about which the court did not make a factual finding.

The defendant on appeal again makes clear why he thinks he is the better parent, but does not demonstrate how the court abused its discretion in determining that there was no material change in circumstances. The court certainly recognized that the plaintiff must improve her parenting skills, but noted that the defendant has his own shortcomings to address for the joint custody arrangement to work. As previously stated, the court found that under the existing custody order the child's physical needs were being met, and the child was doing well in school. Thus, the court did not abuse its discretion as it had a reasonable basis to conclude that there has been no material change in circumstances due to the plaintiff's parenting ability. Cf. *Sheiman* v. *Sheiman*, 72 Conn. App. 193, 195–96, 199–200, 804 A.2d 983 (2002) (affirming trial court's finding of material change in circumstances and modification of custody to award plaintiff sole custody where defendant engaged in erratic and unreasonable behavior, was loud

and abusive to family services worker and counsel, frightened child to point that child did not want to return to defendant's home, and court found no expressions of affection between defendant and child). Furthermore, the fact that both the guardian ad litem and the psychiatrist recommended that the child remain in Texas with the plaintiff supports the trial court's conclusion that there was no material change in circumstances that altered the dissolution court's initial finding that it was in the child's best interests to have primary residence in Texas with the plaintiff.[6] See *Kelly* v. *Kelly*, supra, 54 Conn. App. 55. We repeat: not every change in circumstances is material; and not every material change in circumstances necessarily affects the best interests of the child. To conclude otherwise would be to encourage microscopic analysis of every decision made by a custodial parent in circumstances such as these.

II

We turn to the plaintiff's cross appeal. The plaintiff claims that the court abused its discretion in denying her motion for additional attorney's fees to defend the defendant's motion for modification of custody on the ground that it would be inequitable in light of the defendant's child support and visitation expenses. She argues that the court erred because there is no statutory basis in General Statutes §§ 46b-62 and 46b-82 for the court to consider child support and visitation expenses as a reason to deny a request for attorney's fees.

The following additional facts are relevant to this claim. Judge Shluger awarded the plaintiff $15,000 in attorney's fees to defend the defendant's motion for modification of custody. She filed a subsequent motion stating that she had exhausted the initial award and requested additional fees to cover further legal expenses. Her attorney submitted an affidavit after the hearing on April 14, 2014, stating that he was owed an additional $22,003.87. The plaintiff submitted a financial affidavit to the trial court showing that she has limited financial assets and that her weekly expenses are greater than her weekly income.

The defendant submitted his financial affidavit, in which he indicated that he spends more than $50,000 annually to fulfill his parenting obligations in Texas, which includes renting a second residence in Houston and significant travel costs. The court noted that "[w]hile it is clear that the defendant earns significantly more than the plaintiff does, he is paying the full child support amount and bearing all the cost of his travel and living expenses to accommodate the current parental access schedule. The court will continue the unequal split of the [guardian ad litem] fees,[7] but will not award further legal fees." (Footnote added.) In regard to child support, the dissolution judgment contemplated that the defendant would pay unallocated alimony and child support until December 31, 2012. The apparent basis

of the plaintiff's argument is discrepancies between the parties' financial affidavits regarding child support. The court did not make a finding as to the exact amount the defendant is paying in child support, stating only that he was paying the "full child support amount." The court ultimately denied the plaintiff's motion for additional attorney's fees, finding that "[d]ue to the extraordinary expenses of the defendant to meet his parental duties in Texas, the awarding of fees to the plaintiff for this action would not be equitable." On May 21, 2014, the plaintiff filed a motion to reargue, which the court denied. This cross appeal followed.

The plaintiff sought additional attorney's fees pursuant to § 46b-62 (a), which provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court *may* order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."[8] (Emphasis added.) "An award of counsel fees under [§ 46b-62] calls for the exercise of judicial discretion. . . . In exercising its discretion, the court must consider the statutory criteria set out in §§ 46b-62 and 46b-82 and the parties' respective financial abilities. . . . The language of § 46b-62 *permits*, *without requiring*, a trial court to award attorney's fees after considering the respective financial abilities of the parties and the criteria set forth in section 46b-82. . . . Counsel fees are not to be awarded merely because the obligor has demonstrated an ability to pay." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Marcus* v. *Cassara*, 142 Conn. App. 352, 358–59, 66 A.3d 894 (2013). Our Supreme Court has "interpreted these statutory provisions . . . to mean that an award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." (Citation omitted; internal quotation marks omitted.) *Berzins* v. *Berzins*, 306 Conn. 651, 657, 51 A.3d 941 (2012).

"In making an award of attorney's fees under [§ 46b-62], [t]he court is not obligated to make express findings on each of these statutory criteria." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 693, 830 A.2d 193 (2003). It is also well established that the court has inherent equitable powers in resolving actions stemming from a marital dispute, and the court "may consider factors other than those enumerated in the statutes if such factors are appropriate for a just and equitable resolution of the marital dispute . . . ." *Benavides* v. *Benavides*, 11 Conn. App. 150, 156, 526 A.2d 536 (1987) (discussing court's inherent equitable

powers regarding awarding of attorney's fees under § 46b-62).

"Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Marcus* v. *Cassara*, supra, 142 Conn. App. 359.

On the basis of our review of the record, we conclude that the trial court did not abuse its discretion in denying the plaintiff's motion for additional attorney's fees. The plaintiff argues that §§ 46b-62 and 46b-82 do not specifically provide that the court may consider child support and visitation expenses as a reason to deny a request for attorney's fees. The plaintiff does not address why the court could not consider such expenses in considering the "financial abilities" of the parties as required by § 46b-62. Regardless, the court has inherent equitable powers in resolving actions stemming from marital disputes that allow it to consider factors beyond those enumerated in the statutes. *Benavides* v. *Benavides*, supra, 11 Conn. App. 156. Here, the court considered the parties' overall financial situations, and the substantial cost that the defendant has had to incur and will continue to incur in fulfilling his parental duties under the custody order. It determined that because of such costs, it would be inequitable to award the plaintiff additional attorney's fees. The record provides support for this determination, thus, the court did not abuse its discretion.

The plaintiff further contends that the court abused its discretion because it found that the defendant is paying more in child support than he actually is paying. The court did not make a finding as to the exact amount the defendant is paying, stating only that he is paying the "full child support amount." The plaintiff has failed to demonstrate how this alleged discrepancy caused the court to abuse its discretion in failing to award additional attorney's fees. The court denied the plaintiff's motion because it found that "[d]ue to the extraordinary expenses of the defendant to meet his parental duties . . . the awarding of fees to the plaintiff for this action would not be equitable." The court could still reasonably conclude that it was inequitable to award the plaintiff additional attorney's fees on the basis of the defendant's significant visitation costs and the fact that he pays child support in *some* amount.

As a corollary, the plaintiff also claims that she has no liquid assets and the failure to award her additional fees will undermine the court's existing financial orders regarding child support. She argues that she will now have to use her child support payments to pay her

counsel fees. The court did not make any such finding. Furthermore, the court was not obligated to award the plaintiff additional attorney's fees merely because she exhausted Judge Shluger's initial award of $15,000 to defend the defendant's motion to modify custody. *Marcus* v. *Cassara*, supra, 142 Conn. App. 358–59 (stating that language of § 46b-62 permits, but does not require, awarding of attorney's fees).

The plaintiff's final argument is that there was no change in the parties' financial circumstances since the time of the dissolution that would warrant a change in child support or the allocation of visitation expenses between the parties. She cites case law in her brief holding that the party seeking modification of financial orders bears the burden of proving a material change in circumstances. This argument misses the point because the court did not modify the allocation of child support and the visitation costs, but merely considered such costs as a factor in ruling on the plaintiff's motion for additional attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The guardian ad litem adopted the plaintiff's appellate brief as the statement of the issues and requested that we affirm the judgment of the trial court denying the motion for modification of custody.

[2] The defendant also filed a motion to modify the visitation schedule. Although the court denied the motion to modify custody, it granted the defendant's motion to modify the visitation schedule. "In ruling on a motion to modify visitation, the court is not required to find as a threshold matter that a change in circumstances has occurred. . . . Instead, [i]n modifying an order concerning visitation, the trial court shall be guided by the best interests of the child . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Balaska* v. *Balaska*, 130 Conn. App. 510, 515–16, 25 A.3d 680 (2011).

[3] The defendant reiterates in his brief to this court evidence that he presented at trial to demonstrate he is the better parent. He presents examples of the plaintiff's alleged inattentiveness to the child's needs, as well as examples of where she allegedly was not forthright with the defendant regarding the child. All of this evidence was before the trial court, which made no factual findings on many of the defendant's allegations.

We note that "the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case. . . . It is axiomatic that we defer to the trial court's assessment of the credibility of witnesses and the weight to afford their testimony." (Citation omitted; internal quotation marks omitted.) *Malave* v. *Ortiz*, 114 Conn. App. 414, 425, 970 A.2d 743 (2009). An appeal is not a retrial and it is well established that this court does not make findings of fact. On appeal, the defendant does not claim that the court's findings are clearly erroneous.

[4] The court stated that "[t]he most glaring example and the one that must have caused the minor child great embarrassment was when the plaintiff sent him to school for the class picture in a white shirt while every other child in the class was dressed in a red shirt."

[5] General Statutes § 46b-56 (c) provides: "In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors: (1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and

ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision.''

[6] The court stated in a footnote in its memorandum of decision: "It should be noted that even if the threshold issue of significant change had been met by the defendant, it would not have resulted in a change of custodial orders. Both the written recommendation of Roeder and the testimony of the [guardian ad litem] recommended that primary residence not be changed. Both found that the overall picture of this child indicated that the current arrangement was best at this time. The court certainly agrees, but since the threshold issue was not met, the court declines to enter into further analysis of the custodial factors as detailed in the statutes and case law." The record supports Judge Adelman's finding in this regard.

[7] Judge Shluger had ordered that the plaintiff pay 25 percent of the guardian ad litem fees and that the defendant pay 75 percent of the guardian ad litem fees.

[8] General Statutes § 42b-82 is titled "Alimony," and provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment.''