******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LORNA J. DICKER *v.* MICHAEL DICKER
## (AC 40644)

DiPentima, C. J., and Sheldon and Pellegrino, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court denying the parties' motions for contempt and issuing a remedial order regarding certain prior court-ordered payments. In her motion for contempt, the plaintiff claimed that the defendant had wilfully underpaid the fees he owed for their children's extracurricular activities, and in his motion for contempt, the defendant claimed that the plaintiff failed to pay her share of the children's unreimbursed medical expenses. Thereafter, the trial court held hearings on the motions for contempt and various other pending motions, during which it determined that neither party could be held in contempt because they both believed that pursuant to certain prior court orders they were entitled to withhold payment from each other when and to the extent that the other party had failed to make a required payment to the other. The court also issued a remedial order that set forth a detailed procedure that the defendant was required to follow in the future for presenting proof of unreimbursed medical expenses to the plaintiff and calculating any amounts that he claimed the plaintiff owed him under prior court orders. The trial court then held an evidentiary hearing to determine the amounts that the parties currently owed each other related to the subject fees and expenses and ordered the parties to submit proposed orders. Following the hearing, the court found that the defendant owed the plaintiff $3742.08 for unpaid extracurricular activities fees and the plaintiff owed the defendant $2303.59 for unpaid unreimbursed medical expenses, and, therefore, it ordered the defendant to pay the plaintiff $1438.49, which was the net difference between the unpaid sums. Thereafter, the trial court denied in part the plaintiff's motion to reargue. On the plaintiff's amended appeal to this court, *held*:

1. The plaintiff could not prevail on her claim that the trial court erred in finding that she had violated its medical reimbursement order and in finding, on that basis, that she owed the defendant $2303.59 in unpaid unreimbursed medical expenses, as she failed to establish that the court's findings were clearly erroneous: despite the plaintiff's claim that the trial court erred in finding that the defendant's accounting summaries as to the amounts he had paid for the children's medical expenses were credible, the record revealed that the court credited the defendant's testimony that he had, in fact, paid what he claimed to have paid for the children's medical expenses and that his testimony explained why there were discrepancies between the summaries and the documentation he had presented to the court; moreover, contrary to the plaintiff's assertions that the defendant's medical expense summaries were unsubstantiated and irreconcilable with the record, and that the court erred in its method of calculation of the amounts that the parties owed to each other, the court sought and received proposed orders from both parties, which included suggested methods of calculation and summaries of the expenses they wanted the court to consider, it heard lengthy testimony as to the amounts allegedly owed and it was well aware of the parties' differing accounting approaches and methods of calculating those amounts, which it clearly indicated and discussed in its memorandum of decision.

2. The trial court did not abuse its discretion in denying the plaintiff's motion for contempt on the basis of its finding that the defendant was not in contempt for withholding from her payment of the amount he owed for the children's extracurricular activities, as the plaintiff failed to advance any compelling argument as to why the court's determination was not supported by the record, and this court was not left with the definite and firm conviction that a mistake had been made; although the plaintiff contended that because the defendant's actions were knowing and voluntary, they must have constituted wilful contempt, the court's refusal to

find the defendant in contempt was not predicated on a finding that the defendant's actions were not knowing or voluntary but, rather, was based on its finding that the parties withheld payments from each other because of their common belief that it was proper to do so.

3. The trial court did not abuse its discretion by permitting the defendant unilaterally to deduct the amount of undisputed unpaid unreimbursed medical expenses owed by the plaintiff from future payments that the defendant owed the plaintiff for the children's extracurricular activities, as that court's remedial order, when viewed in the context of the court's prior orders and in light of the fact that the court was in the best position to give effect to those orders, was not manifestly unreasonable.

4. The plaintiff could not prevail on her claim that the trial court abused its discretion in denying her motion to reargue, which was based on her claim that the court incorrectly concluded that she had ample opportunity to submit any relevant evidence prior to the final hearing on the parties' various motions but had chosen not to do so; despite the plaintiff's contention that the trial court, without explanation, denied her request to present additional new evidence during the subject hearing, the record was clear that the court provided the plaintiff with a sufficient explanation as to why it denied her motion for contempt, and a review of the hearing transcripts indicated that the parties' counsel agreed in advance to prioritize certain issues before the court with respect to their various motions.

5. The plaintiff could not prevail on her claim that the trial court violated her due process right to be heard when it denied her motion for contempt before she had rested her case-in-chief, which she claimed deprived her of a reasonable opportunity to cross-examine the defendant or to present evidence in support of that motion: the record revealed that the plaintiff had a sufficient opportunity to provide the trial court with evidence of the defendant's contempt during the subject hearing and that at no point during the remainder of the hearing did she request to submit additional evidence, and although the plaintiff claimed that she was unable to bring certain relevant evidence to the court's attention, nothing in the record suggested that, had she been allowed even greater latitude and more time, she would have presented evidence with respect to the wilfulness of the defendant's actions that was not already before the court; moreover, although the plaintiff claimed that the trial court ignored evidence that the defendant knowingly made deductions from court-ordered payments to her, which she claimed constituted acts of wilful contempt, noncompliance alone was not sufficient to support a judgment of contempt, as it was within the sound discretion of the court to deny her claim for contempt because there was an adequate factual basis to explain the defendant's failure to honor the court's prior orders.

Argued December 6, 2018—officially released April 16, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Middlesex and tried to the court, *Abrams, J.*; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Albis, J.*, denied the parties' motions for contempt and issued a remedial order; subsequently, the court, *Albis, J.*, issued an order regarding certain unreimbursed medical expenses; thereafter, the court, *Albis, J.*, denied in part the plaintiff's motion to reargue, and the plaintiff appealed to this court; subsequently, the plaintiff filed an amended appeal. *Affirmed.*

*Lorna J. Dicker*, self-represented, the appellant (plaintiff).

*Michael Dicker*, self-represented, the appellee (defendant).

*Opinion*

PELLEGRINO, J. The plaintiff, Lorna J. Dicker, appeals from the judgment of the trial court, resolving several of the parties' postjudgment motions. On appeal, the plaintiff claims that the court improperly (1) found that the plaintiff owed sums to the defendant, Michael Dicker, for unreimbursed medical expenses for the parties' minor children, (2) found that the defendant was not in contempt of existing court orders, (3) concluded that the defendant could deduct unreimbursed medical costs from future quarterly activity fee payments that he owed to the plaintiff, and (4) denied the plaintiff's motion to reargue. The plaintiff also claims that the court violated her due process right to be heard on her motion for contempt. For the reasons set forth in this opinion, we disagree with the plaintiff and affirm the judgment of the trial court.

The record discloses the following facts and procedural history. On March 29, 2012, the trial court, *Abrams*, *J.*, dissolved the parties' marriage, incorporating into its judgment of dissolution the parties' agreement dated February 17, 2012. The agreement provided, inter alia, that the defendant would be responsible for the first $3720 incurred for their children's unreimbursed medical and dental expenses each year and that the parties would share equally in any such expenses that exceeded that amount.[1] As for the children's extracurricular activities, the agreement provided that the plaintiff would pay for such activities up to the sum of $1200 per year and that the parties, thereafter, would share any expenses in excess of that amount equally.[2]

Thereafter, the parties filed numerous motions for contempt against each other for alleged failures to comply with the terms of their agreement. In an effort to resolve their disputes, the parties entered into two additional agreements. In an agreement dated May 27, 2014, the parties decided, inter alia, that they would reconcile, on a quarterly basis, their respective payments for the children's unreimbursed medical expenses. In a second agreement dated August 18, 2014, the parties settled their dispute with respect to various prior unreimbursed medical expenses. Each of these agreements was approved by the court and made an order of the court.

On June 9, 2016, the plaintiff filed a motion for contempt, claiming that the defendant had wilfully underpaid the fees he owed for the children's extracurricular activities. See footnote 2 of this opinion. On September 23, 2016, the defendant also filed a motion for contempt, claiming that the plaintiff had failed to pay her agreed upon share of the children's unreimbursed medical expenses. The court, *Albis*, *J.*, held hearings on November 3 and 23, 2016, with respect to the parties' motions.[3] On November 23, 2016, the court ruled that neither

party could be held in contempt because each of them believed that he or she was entitled, under the court's previous orders, to withhold payment from the other as a result and to the extent of the other party's nonpayment of sums due to him or her.

During that hearing, the court also issued a remedial order requiring, inter alia, that in the future the defendant provide the plaintiff with calculations sufficient to explain any amounts he claimed that she owed him under the previous orders. The order further provided that if the plaintiff disputed any amount so claimed and documented by the defendant, she was obligated to notify him of that dispute. The order finally provided that if any undisputed expense had not been paid to the defendant by the next due date, he could deduct that undisputed amount from a future installment of the children's extracurricular activity expenses that he then owed to the plaintiff. Critically, if the plaintiff disputed any amount, so claimed and documented by the defendant, she was prohibited from deducting that amount from any future payments she then owed to him until the dispute was resolved by the parties themselves or by the court. At the conclusion of that hearing, the court ordered the parties to attempt to reconcile the amounts they currently owed to one another, but also stated that a subsequent evidentiary hearing would be scheduled to determine those amounts if they were unable to reach an agreement.

The parties could not reach an agreement regarding the amounts they owed one another for their children's extracurricular activities and medical expenses, and, therefore, the court held an evidentiary hearing to resolve those issues on March 28, 2017. At that hearing, the court ordered the parties to submit proposed orders by April 12, 2017. On May 9, 2017, the court filed a written memorandum of decision in which it found that for the period from August 18, 2014 to November 23, 2016, the defendant owed the plaintiff $3742.08 for extracurricular activity fees, while the plaintiff owed the defendant $2303.59 for unreimbursed medical expenses. As a result, the court ordered the defendant to pay the plaintiff $1438.49, the net difference between those unpaid sums.

On June 7, 2017, the plaintiff filed a motion to reargue, asking the court to reconsider many of its findings and rulings on the parties' motions for contempt, including its decision not to hold the defendant in contempt and its method of calculating the amounts the parties owed to one another for their children's expenses. On June 28, 2017, the court issued its memorandum of decision denying the plaintiff's motion to reargue with respect to all issues except that of reimbursement for additional orthodontic expenses.[4] This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the court erred in finding that she had violated its medical reimbursement order and in finding, on that basis, that she owed the defendant $2303.59. She further argues that the court erred in finding that the defendant's accounting summaries, as to amounts he had paid for the children's medical expenses, were credible. Specifically, the plaintiff argues that the numerical values listed by the defendant on his quarterly spreadsheets, which were submitted as evidence on the issue of unreimbursed medical expenses, were unsubstantiated by proper documentation. We disagree.

"At the outset, we note that the court's factual determinations will not be overturned on appeal unless they are clearly erroneous. . . . As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Chowdhury* v. *Masiat*, 161 Conn. App. 314, 324, 128 A.3d 545 (2015).

During the evidentiary hearing on March 28, 2017, the court heard lengthy testimony as to the amounts allegedly owed by each party to the other. The defendant testified that he had incurred medical expenses for his children's health care that had been paid directly either from his health savings account or by his insurance provider. He claimed that his health savings account, his insurance payment history and his spreadsheets summarizing his children's medical expenses corroborated one another. The plaintiff, who appeared with counsel, was able to cross-examine the defendant at length as to his accounting methods. Moreover, the court questioned the defendant on multiple occasions with respect to his accounting summaries and the other evidence of payments he had presented to the court.

Before issuing its memorandum of decision, the court sought and received proposed orders from each party, which included suggested methods of calculation and summaries of expenses they wanted to have considered. In its revised memorandum of decision, the court addressed the discrepancies between the plaintiff's and the defendant's calculations, noting that many of those discrepancies arose from the parties' different accounting methods.[5] The court stated that the plaintiff interpre-

ted its August 18, 2014 order, which provided that all unreimbursed payments owed at the time of the order had been reconciled, as an indication that the period for determining if the minimum annual threshold had been reached had been restarted. The court explained, however, that "the August 18, 2014 order does not preclude such prior expenses from being included in the calculation of the $3720 threshold for the calendar year 2014 . . . [and] [t]herefore, the expenses found to be incurred by the defendant during the remainder of 2014 were in excess of the . . . threshold [amount]." The court also concluded that the language of its May, 2014 order supported the plaintiff's method of accounting, however, "[o]nly for the purpose of finding the amounts due at this time, the court adopts the approach of the defendant. It does so primarily because it finds, based on the *credible testimony* of the defendant, that all of his claimed expenses had been paid by him by the time of the [March 28, 2017] hearing."[6] (Emphasis added.)

Despite the plaintiff's repeated claim that the court erred in finding that the defendant's medical expense spreadsheet summaries were credible, our review of the record reveals that the court, instead, credited the defendant's *testimony* that he had, in fact, paid what he claimed to have paid before the March 28, 2017 hearing.[7] Because the court deduced that a number of the defendant's quarterly summaries included expenses that had been incurred and claimed in one quarter, but paid in another quarter, the defendant's testimony was found to have explained why there were discrepancies between his summaries and the documentation he presented to the court. Our review of the record indicates that during the March 28, 2017 hearing and on appeal, these discrepancies provided the basis for many of the plaintiff's claims that the defendant's accounting summaries were inaccurate.

The plaintiff also argues, in addition to claiming that the court erred in its method of calculation, that expenses were listed in the defendant's medical expense summaries that are irreconcilable with the record. As proof of such a contradiction, the plaintiff directed the court's attention to the defendant's medical expense summary sheet and, specifically, to the entry labeled "[Daughter's] Root Canal" for $506.30. The plaintiff claims that this entry is inaccurate, arguing that the reason the defendant could not provide any documentation of any payment or subsequent repayment of the expense was because she had paid for it. We do not agree with the plaintiff's resulting claim that the defendant's medical expense summaries are irreconcilable with the trial court record.

Moreover, at the time the court issued its memorandum of decision, it was in possession of the parties' proposed orders relating to the amounts owed, along with explanations of how the parties believed the

expenses should be calculated. It is clear that the court was well aware of the differing accounting approaches with respect to the calculation of amounts owed by both parties, which is clearly indicated and discussed in the court's memoranda of decision. After a thorough review of the record, including the parties' proposed calculations, the exhibits, and the hearing transcripts, we conclude that the plaintiff has failed to establish that the court's determinations as to the amounts the parties owed one another for their children's expenses were clearly erroneous.

## II

The plaintiff next claims that the court abused its discretion in not finding the defendant in contempt for withholding payment from her. Specifically, the plaintiff argues that the court order requiring the payment in question was clear and unambiguous and that there was no evidence before the court suggesting that the defendant's violation of the order was anything other than wilful. We disagree.

The following legal principles guide our resolution of the plaintiff's claim. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *In re Jeffrey C.*, 261 Conn. 189, 196, 802 A.2d 772 (2002). "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [defendant] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . A finding that a person is or is not in contempt of a court order depends on the facts and circumstances surrounding the conduct. The fact that an order has not been complied with fully does not dictate that a finding of contempt must enter. . . . [It] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order. . . .

"It is therefore necessary, in reviewing the propriety of the court's decision to deny the motion for contempt, that we review the factual findings of the court that led to its determination. The clearly erroneous standard is the well settled standard for reviewing a trial court's factual findings. A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citations omitted; internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 326–27, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

In the present case, the plaintiff argues simply that

because the defendant's actions were knowing and voluntary, they must have constituted wilful contempt. The court's refusal to find the defendant in contempt, however, was not predicated on a finding that the defendant's actions were not knowing or voluntary, but was based on its finding that each party withheld payments from the other because of their common belief that it was proper to do so. The court explained this conclusion as follows in its oral decision on the parties' contempt motions: "[G]iven the period of time covered and the number of bills, it would not be possible today to hear all the evidence the court would have to hear in order to make a specific finding as to how much was due with respect to each of those and an ultimate finding as to who owed what to whom. . . . But it is clear to the court based on the evidence presented so far that both parties acted in a way that they believed was permitted by the court order. I don't say that it was appropriate for them to do so and there are principles of Connecticut law against self-help, but I don't believe that there would be grounds for a finding by clear and convincing evidence that either party had wilfully violated the court order."

Because the plaintiff fails to advance any compelling argument as to why the court's determination was not supported by the record and we are not left with the definite and firm conviction that a mistake has been made, we conclude that the court did not abuse its discretion in denying the plaintiff's motion for contempt.

### III

The plaintiff next claims that the court abused its discretion when it allowed the defendant to withhold money unilaterally from her in the future if he believed that she owed him money for unreimbursed medical expenses. The plaintiff further claims that the court unnecessarily combined two unrelated orders to provide the defendant with the option of self-help, whereas she had to file a motion for contempt if the defendant failed to make the correct payments. We disagree.

It is well settled that "[c]ourts have continuing jurisdiction . . . to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . . When an ambiguity in the language of a prior judgment has arisen as a result of postjudgment events, therefore, a trial court may, at any time, exercise its continuing jurisdiction to effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . . Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable." (Internal quotation marks omitted.) *Lawrence* v. *Cords*, 159 Conn. App. 194, 198–99, 122 A.3d 713, (2015).

In the present case, contrary to the plaintiff's claim, the court's remedial order lays out a detailed rule of future application that the defendant was to follow when presenting proof of unreimbursed medical expenses to the plaintiff. The court's order provided: "If and when the accumulated receipts for the year reach the threshold so that the plaintiff, under the current orders of the court, would be responsible to reimburse a percentage of those to the defendant, he shall include his calculation of what that amount is. And if the plaintiff disputes that calculation, she shall notify the defendant in writing within thirty days after she's received those receipts. If she doesn't dispute it, then she shall make payment of her share within sixty days after her receipt of those receipts. If her undisputed portion of those expenses has not been paid to the defendant by the due date of the next quarterly installment of the activity fee, he shall then be entitled to deduct from that quarterly installment the amount of the unpaid share of unreimbursed expenses for medical [costs] owed by the plaintiff. If any amount is in dispute as notified properly by the plaintiff, there shall be no deduction until that dispute has been resolved either by agreement of the parties or by court order."

The order clearly provides that if the plaintiff disputed a future expense claimed by the defendant, then the defendant was not permitted "to deduct from that quarterly installment the amount of the unpaid share of unreimbursed expenses for medical [costs] owed by the plaintiff." Only when the plaintiff did not dispute the expense and it was overdue by an entire quarter, did the order allow for the defendant to make a deduction. After viewing the court's remedial order in the context of its previous orders, and acknowledging that the court, being intimately familiar with the details of the present case, was in the best position to give effect to the prior orders, we conclude that the court's remedial order was not manifestly unreasonable. Accordingly, the plaintiff has failed to demonstrate that the court abused its discretion by allowing the defendant to deduct undisputed unpaid medical expenses from subsequent payments.

IV

The plaintiff also claims that the court abused its discretion when it denied her motion to reargue.[8] Specifically, the plaintiff argues that the court incorrectly concluded that she had ample opportunity to submit evidence prior to the final hearing but had chosen not to do so. We disagree.

"[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used

to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . .” (Internal quotation marks omitted.) *Liberti* v. *Liberti*, 132 Conn. App. 869, 874, 37 A.3d 166 (2012). “The standard of review for a court’s denial of a motion to reargue is abuse of discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did.” (Internal quotation marks omitted.) *Mengwall* v. *Rutkowski*, 152 Conn. App. 459, 465–66, 102 A.3d 710 (2014).

In her motion to reargue, the plaintiff argued that she had not been given a meaningful opportunity to present evidence on her motion for contempt. Specifically, she argued that the court had used an improper method in calculating what unreimbursed medical expenses were owed and that representations made by the defendant were not supported by the record.[9] She further argued that an additional hearing was warranted because she had acquired relevant evidence on the issue of contempt that arose after the court made its oral order of November 23, 2016, but before it issued its written memorandum of decision.[10]

In its memorandum of decision on the motion to reargue, the court stated: “The plaintiff seeks, among other things, a further opportunity to present evidence in support of a finding of contempt against the defendant. . . . The record will reflect that on November 3, 2016, a hearing commenced with regard to multiple motions filed by the parties, including each party’s contempt motion against the other. It was made clear at the outset, and agreed by the parties, that a single combined hearing would be held on all of the pending motions. The hearing lasted essentially the entire afternoon of November 2, 2016, resuming on November 23, 2016, and continuing for most of that day. Both parties testified, with the plaintiff giving testimony for several hours spanning both dates. . . .

“By the end of the second day of the hearing on multiple motions, the court had heard sufficient credible evidence to conclude that while the activity fee and medical reimbursement orders had not been followed, there was also sufficient credible evidence to preclude it from finding contempt on the part of either party under the *Brody* standard.[11] For the reasons of judicial efficiency, and after hours of testimony which was sometimes repetitive, the court issued remedial orders at the end of the day on November 23, 2016. . . .

“The bulk of the remainder of the plaintiff’s motion requests either the court’s reconsideration of evidence

presented at the hearing, or its allowance of additional evidence that might have been submitted at the hearing or that relates to events occurring after the conclusion of the hearing. With the exception of one issue,[12] the court denies those requests." (Footnotes added.)

Despite the plaintiff's assertions that the "court, without explanation, denied the plaintiff's request to present additional and new evidence, other than related to the orthodontia payments," the record is clear that the court provided the plaintiff with a sufficient explanation as to why it denied her motion. Furthermore, a review of the hearing transcripts indicates that counsel for the parties agreed in advance to prioritize certain issues before the court with respect to their various motions. Accordingly, the plaintiff has failed to demonstrate that the trial court abused its discretion when it denied her motion to reargue.

V

Lastly, the plaintiff claims that the court violated her due process right to be heard when it denied her motion for contempt before she rested her case-in-chief on that motion. Specifically, the plaintiff claims that she was not afforded a reasonable opportunity to cross-examine the defendant or to present evidence in support of her motion for contempt. She further argues that it is unclear how the court could make a credibility finding without the plaintiff's testimony in support of that motion. We disagree.

"It is a fundamental tenet of due process . . . that persons whose property rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner. . . . Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained. . . . [A] party's constitutionally protected right to present evidence [however] is not unbounded. . . . To the contrary, we previously have determined that the court reasonably may limit the time allowed for an evidentiary hearing." (Citations omitted; internal quotation marks omitted.) *Harris* v. *Hamilton*, 141 Conn. App. 208, 215 n.5, 61 A.3d 542 (2013), citing *Szot* v. *Szot*, 41 Conn. App. 238, 241–42, 674 A.2d 1384 (1996).

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . Although it is axiomatic that the scope of cross-examination generally rests within the discretion of the trial court, [t]he denial of all meaningful cross-examination into a legitimate area of inquiry

constitutes an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Dubreuil* v. *Witt*, 65 Conn. App. 35, 42, 781 A.2d 503 (2001).

The plaintiff argues that our decision in *Szot* applies with equal force in the present case. "In *Szot*, the court, *despite the protests of the plaintiff's counsel* that she still had additional evidence to present, ended not only cross-examination but also the entire presentation of evidence. . . . This court held that the trial court's termination of the proceedings violated the plaintiff's due process right to be heard." (Citation omitted; emphasis added; internal quotation marks omitted.) *Corriveau* v. *Corriveau*, 126 Conn. App. 231, 237, 11 A.3d 176, cert. denied, 300 Conn. 940, 17 A.3d 476 (2011). Here, unlike in *Szot*, the court's oral decision with respect to the issue of contempt did not terminate the entire presentation of evidence; nor did the court make the order in spite of the plaintiff's express protest that she still had evidence to present with respect to contempt. Rather, near the end of the second day of the evidentiary hearing on November 23, 2016, during a short recess, the trial court met with counsel for both parties in chambers to address the contempt issue; upon resuming the hearing, the court made its ruling with respect to the parties' motions for contempt.[13]

In the court's ruling, it explained the need to make two sets of remedial orders to properly effectuate its previous orders. It stated: "One [set] is a remedial order to make a finding as to exactly what is owed by whom to whom. . . . The other set concerns the future and how we can avoid the situation where these parties are again operating at cross purposes and wind up back in court over the same issues." Thereafter, the court described the basis for its decision not to hold either party in contempt, how it wanted to approach the disputed amounts that were claimed under the court's previous orders, and how it was going to craft the remedial order so as to create a more workable situation in the future. The court then asked counsel: "Any questions or need for clarification of any of those orders? Counsel?" In response, both counsel raised issues concerning the manner in which the parties would reconcile amounts owed to one another, the manner in which they should present proof of their expenses to one another, and whether there was a need for a further order expressly stating that the parties must act in good faith when disputing amounts claimed by one another. None of the issues raised with the court, however, concerned the court's announced intention not to hold either party in contempt.

Thereafter, before proceeding to closing argument, the court asked counsel again: "[Are there] [a]ny other questions?" Hearing none, the court stated: "Then that will dispose [of], for the time being, the motions for contempt subject to [a] further hearing if the parties

aren't able to resolve the issue of the amounts that, as of this date, are due from either party to the other for unreimbursed medicals or activity fees. If the parties aren't able to reach an agreement, the court will have further hearing for the purpose of those remedial orders . . . ."

At no point during the remainder of the hearing did the plaintiff ask to submit additional evidence. Although the plaintiff continues to argue on appeal that she was unable to bring several pieces of relevant evidence to the court's attention, nothing in the record suggests that, had the plaintiff been allowed even greater latitude and more time, she would have presented evidence with respect to wilfulness that was not already before the court. The record indicates that the evidence that the plaintiff repeatedly claimed the court ignored largely dealt with the fact that the defendant knowingly made deductions from amounts he was ordered to pay to the plaintiff, which she, therefore, claims to have constituted acts of wilful contempt. As discussed previously in this opinion, however, "[n]oncompliance alone will not support a judgment of contempt. . . . [It] is within the sound discretion of the court to deny a claim for contempt *when there is an adequate factual basis to explain the failure to honor the court's order.*" (Emphasis added; internal quotation marks omitted.) *Spencer* v. *Spencer*, supra, 177 Conn. App. 542.

Our review of the record reveals that the plaintiff had a sufficient opportunity to provide the court with evidence of contempt during the November, 2016 hearings. Accordingly, the plaintiff has failed to show that her constitutional rights were violated or that she was deprived of a fair hearing as a result of the court's decision.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Unreimbursed medical expenses refer to expenses not covered by the defendant's insurance policies.

[2] The parties entered into a postjudgment agreement, dated July 11, 2013, which modified their original agreement to require that the defendant pay the plaintiff, on a quarterly basis, $1200 per year, per child, for the children's extracurricular activities, otherwise, the terms of the 2012 agreement were to remain in full force and effect. The July, 2013 agreement was made a court order on July 15, 2013.

[3] In addition to the parties' contempt motions, the court also heard various other motions filed by the parties. The court's rulings on those motions are not at issue in the present appeal.

[4] See footnote 10 of this opinion.

[5] The two approaches differed in that they calculated what was owed on the basis of when the expense was incurred versus when the expense was actually paid. In the present case, the defendant argued that expenses incurred during any relevant quarter could be included in the accounting for that quarter. Conversely, the plaintiff argued that only expenses paid in a relevant quarter should be reimbursed in that quarter.

[6] The memorandum of decision also provided that, "because the plaintiff's proposed findings and orders highlight an issue likely to recur in the reconciliation of future unreimbursed medical expenses, the court makes a remedial order regarding expenses incurred and paid after November 23, 2016 . . . . Going forward, consistent with the terms of the judgement as modified by the May 27, 2014 order, the quarterly unreimbursed medical expense

reconciliations shall be based on *actual payments* made during the quarter, and *shall not include expenses* to be paid in the future for services rendered during the quarter." (Emphasis added.)

[7] The following exchange occurred on the record:

"The Court: All right. Sir, now, you were asked before about when expenses were accrued as opposed to when they were paid. Is it your testimony now that every expense that you're claiming to have paid for the children, except the ones that your former wife paid herself, any unreimbursed medical expense, that you've paid them all as of now?

"The Defendant: Yes.

"The Court: So, you might not have paid it as of the time you requested reimbursement?

"The Defendant: Yes, Your Honor.

"The Court: But you've paid it by now?

"The Defendant: Yes."

[8] The motion filed with the court was titled "Motion to open, to submit additional and new evidence, to reargue and for reconsideration [of] the court's decision dated May 18, 2017." The court correctly treated the plaintiff's motion as a motion to reargue. See Practice Book § 11–12. For the purpose of our analysis, we adopt the court's characterization and refer to the plaintiff's motion as her motion to reargue.

[9] The plaintiff also argued that the court incorrectly included orthodontic costs with medical and dental costs, despite each being covered by different orders and subject to different calculations. She further argued that she was not afforded a reasonable opportunity to address the issue of the orthodontic costs because they were not previously in dispute. The court granted the plaintiff's motion with respect to this issue and permitted both parties to submit to the court any relevant evidence with respect to orthodontic expenses. The court's order provided: "[U]nder all the circumstances, the court concludes that the plaintiff did not understand or expect that orthodontia expenses would be taken into account. In the interest of justice, the court wishes to afford both parties the opportunity to provide evidence of such expenses."

[10] The court restricted the March 28, 2017 hearing to the presentation of evidence with respect to specific amounts owed by either party. In her motion to reargue, the plaintiff claimed that she possessed additional evidence of wilful contempt that occurred after the November 23, 2016 hearing. The court's decision, however, related specifically to the period from August 18, 2014 to November 23, 2016. The court correctly denied the plaintiff's motion with respect to this evidence because it concerned conduct that was outside of the relevant time frame.

[11] See *Brody* v. *Brody*, 315 Conn. 300, 319, 105 A.3d 887 (2015) (finding of civil contempt must be proven by clear and convincing evidence, not by preponderance of evidence).

[12] See footnote 11 of this opinion.

[13] The court made the following statement: "I would ask [the court] monitor to prepare a transcript of the remarks and the interim orders that I'm about to make following a discussion I had in chambers with counsel during the recess."

———————————————————