******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## DAVID L. MECARTNEY *v.* CAROLINE L. MECARTNEY
### (AC 43276)

Bright, C. J., and Elgo and Abrams, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the trial court's orders issued follow-
ing a hearing on the defendant's motion for contempt. Pursuant to a
separation agreement entered into by the parties and incorporated into
the judgment of dissolution, the plaintiff was obligated to name the
defendant as the beneficiary of a $900,000 life insurance policy; however,
the plaintiff was not required to pay more than $3500 for the annual
premium for the insurance. In 2008, the court issued an order increasing
the life insurance coverage the plaintiff was required to maintain from
$900,000 to $1.8 million. The order made no mention of the $3500 cost
limitation. In 2019, the plaintiff communicated to the defendant that he
would be discontinuing any further life insurance coverage because the
costs had become excessive. Coverage under the original policy lapsed
in March, 2019. The plaintiff then obtained a life insurance policy through
L Co., effective May, 2019, but it contained an exclusion for any and all
claims arising out of the insured person piloting any type of aircraft.
The plaintiff owned a private aircraft and flew it ten to thirty times per
month. In June, 2019, the court issued certain orders relating to the
defendant's motion for contempt regarding the insurance coverage that
the plaintiff had obtained: the plaintiff was required to apply to five
separate insurance companies to obtain adequate insurance without a
piloting exclusion, and, in the event that an application was rejected,
or it was accepted with a piloting exclusion, the plaintiff was to transfer
to the defendant as security for the life insurance obligation a mortgage
in the face amount of $1.8 million on property owned by the plaintiff,
and, until there was life insurance without a piloting exclusion or the
mortgage deed had been recorded, the plaintiff was prohibited from
piloting any aircraft or being a passenger in any airplane piloted by
anyone else other than by a commercial airline pilot on a commercial
airline flight. The court also found the plaintiff's claim that he let the
original life insurance policy lapse because the cost to renew would
have been $65,850 and that he was only required to pay $3500, was not
credible, concluding that the 2008 order increasing the life insurance
obligation eliminated this limitation. *Held*:

1. The trial court did not err in concluding that the insurance premium cost
   limitation of $3500 per year had been eliminated when the court amended
   the amount of required insurance coverage in 2008; this court would
   not second-guess the trial court's determination that the plaintiff's claim
   that he believed he was required to maintain insurance only up to an
   annual premium of $3500 was not credible, and it was reasonable for
   the trial court to interpret the 2008 order as eliminating the $3500 limita-
   tion, given the fact that the amount of insurance required was doubled
   in that order and in light of the plaintiff's own conduct in maintaining
   insurance with annual premiums in excess of the $3500 limitation.

2. The plaintiff's claims challenging the trial court's orders prohibiting him
   from private piloting until he obtained life insurance without a piloting
   exclusion or, in the alternative, requiring him to transfer a mortgage to
   the defendant on property he owned to secure his life insurance obliga-
   tion were moot: because the plaintiff secured three accidental death
   policies, in addition to the life insurance obtained from L Co., that meet
   the requirements of the amended separation agreement, the plaintiff
   was no longer subject to the alternative conditions imposed by the
   court's June, 2019 orders.

Argued March 8—officially released July 27, 2021

*Procedural History*

Action for dissolution of a marriage, and for other

relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Owens, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Sidney Axelrod*, judge trial referee, granted the defendant's motion to modify alimony; subsequently, the court, *Hon. Sidney Axelrod*, judge trial referee, issued an order modifying the amount of life insurance coverage the plaintiff was required to maintain; thereafter, the court, *Hon. Sidney Axelrod*, judge trial referee, issued certain orders following a hearing on the defendant's motion for contempt, from which the plaintiff appealed to this court. *Affirmed.*

*Joseph T. O'Connor*, for the appellant (plaintiff).

*Alexander J. Cuda*, for the appellee (defendant).

*Opinion*

ABRAMS, J. The plaintiff, David L. Mecartney, appeals from the orders of the trial court entered following a hearing on the amended postjudgment motion for contempt filed by the defendant, Caroline L. Mecartney, related to the plaintiff's failure to maintain adequate life insurance. Specifically, the plaintiff argues that the trial court (1) erred in concluding that the insurance premium cost limitation of $3500 per year was eliminated when the court amended the required amount of insurance in 2008, (2) erred in issuing an "injunction" without a finding of irreparable injury or lack of an adequate remedy at law, and (3) exceeded its equitable authority to fashion orders to protect the integrity of its earlier judgment. We agree with the trial court that the insurance cost limitation was eliminated when the total amount of required insurance was amended, and we conclude that because the plaintiff now has adequate insurance in place, his second and third claims are moot. Accordingly, we affirm the orders of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's claims on appeal. On January 15, 1999, the parties' marriage was dissolved by a judgment of the court, *Owens*, *J.*, that incorporated their written separation agreement. Article 13 of the separation agreement provided that (1) the plaintiff was required to name the defendant as the beneficiary of a $900,000 life insurance policy for as long as he was obligated to pay unallocated alimony, (2) the life insurance was to be modifiable and subject to a "second look" at the time when there is a "second look" at alimony in 2008, as provided previously in the agreement, and (3) the plaintiff's obligation concerning that insurance would not require him to pay more than $3500 for the annual premium on that insurance. The agreement also provided that if the cost of the premium were to exceed $3500 per year, the plaintiff would be required to procure as much life insurance as possible for that premium and that any deficiency in coverage would be paid to the defendant from the plaintiff's estate if he died while still obligated to pay alimony.

On June 28, 2007, the trial court, *Hon. Sidney Axelrod*, judge trial referee, entered an order following a hearing on the defendant's motion to modify alimony and child support. As part of her motion, the defendant requested that the plaintiff's life insurance obligation be increased in light of her request for an increase in alimony. The court, in its order, increased unallocated alimony from $17,500 per month to $30,000 per month, but it denied the defendant's request that the plaintiff be required to increase the amount of life insurance to secure his obligation to the defendant. Following the defendant's amended motion for a "second look" prior to the scheduled expiration of the term of alimony, on

November 18, 2008, the court, *Hon. Sidney Axelrod*, judge trial referee, ordered that the plaintiff's life insurance coverage be increased from $900,000 to $1.8 million. Following that November 18, 2008 order, the plaintiff made the defendant the beneficiary of $1.8 million in life insurance coverage as part of a policy with $5 million in overall life insurance coverage.

On January 8, 2019, the plaintiff communicated to the defendant as follows: "As per the attached, my [l]ife [i]nsurance costs have gone up from approximately [$10,000] per year to [$65,000]. In accordance with the divorce agreement, I will be discontinuing any further life insurance as the [cost] has become excessive. Please confirm you have received this [e-mail]. If you wish to pursue this through the courts please have your attorney contact [my attorney]." On February 6, 2019, the plaintiff's life insurance company notified him that the premium due had not been received, and that coverage would lapse on March 24, 2019, unless payment was received by that date. The defendant filed her original motion for contempt on February 12, 2019, prior to the lapse of the $5 million life insurance policy. Additionally, on February 20, 2019, the plaintiff applied for life insurance through Prudential Life in such an amount that would have satisfied his obligation under the separation agreement. His application for that insurance was denied, and he did not present to the court any reason for the denial. Coverage under the original policy lapsed on March 24, 2019.

Thereafter, the plaintiff arranged to obtain a $1.8 million life insurance policy through Lloyd's of London effective May 1, 2019 through May 1, 2020, with the defendant as a named beneficiary. However, the coverage under the policy excluded any and all claims arising out of the insured person piloting any type of aircraft.[1] On May 6, 2019, the court, *Hon. Sidney Axelrod*, judge trial referee, entered a temporary order regarding the defendant's motion for contempt, which provided that the plaintiff was prohibited from piloting an airplane and from being a passenger in an airplane piloted by anyone else, other than a commercial airline pilot on a commercial flight, until May 15, 2019, or until further order of the court, "unless he first secures a life insurance policy insuring his life."

Additionally, in its June 14, 2019 memorandum of decision, the court, *Hon. Sidney Axelrod*, judge trial referee, fashioned two orders, which are largely the subject of this appeal.[2] First, the court ordered that the plaintiff apply to five separate insurance companies to obtain adequate insurance without a piloting exclusion, and, "[i]n the event the application is rejected or in the event it is accepted but with a piloting exclusion . . . the court orders that the plaintiff transfer to the defendant as a security for his life insurance obligation a mortgage in the face amount of $1.8 million on property

owned by him [in Wyoming]." Second, the court ordered that, "[u]ntil such time as a life insurance [policy] is provided without a piloting exclusion or the mortgage deed has been recorded, the court orders that the plaintiff is prohibited from piloting any aircraft himself and from being a passenger in any airplane [piloted] by anyone else other than by a commercial airline pilot on a commercial airline flight." This appeal followed.

I

The plaintiff argues that the trial court erred in concluding that the insurance premium cost limitation of $3500 per year was eliminated when the court amended the amount of insurance in 2008. We disagree.

The following additional facts are relevant to this claim. At the hearing on the motion for contempt, the plaintiff argued that he was not in contempt of court because the cost to renew his $5 million insurance policy would have been $65,850, and the separation agreement required him to pay only $3500 for life insurance. The court rejected that argument in its June 14, 2019 memorandum of decision, stating that "[t]he court finds that the plaintiff's argument that he believed that he was only under a court order to provide $3500 of life insurance is not credible. The order of this court on November 18, 2008, did not include the $3500 limitation. The plaintiff's interpretation of the court order of November 18, 2008, was not reasonable and was not made in good faith." The court provided three reasons for its determination: (1) "the letter from the plaintiff to the defendant on January 8, 2019, referred to the cost increasing to $65,000 for the life insurance . . . [and] [n]o mention was made in that letter of the $3500 limit, (2) the Prudential Life insurance policy that was applied for had a premium in the first year [of] $13,063, and (3) the premium on the Lloyd's of London policy had a premium in the first year of $13,667."

"It is well established that the construction of a judgment presents a question of law over which we exercise plenary review." *Bauer* v. *Bauer*, 308 Conn. 124, 131, 60 A.3d 950 (2013). Courts, however, "have continuing jurisdiction . . . to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . . When an ambiguity in the language of a prior judgment has arisen as a result of postjudgment events, therefore, a trial court may, at any time, exercise its continuing jurisdiction to effectuate its prior [judgment] . . . by interpreting [the] ambiguous judgment and entering orders to effectuate the judgment as interpreted . . . . Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable." (Internal quotation marks omitted.) *Dicker* v. *Dicker*, 189 Conn. App. 247, 260, 207 A.3d 525 (2019). "In construing a trial court's judgment, [t]he determinative factor is the

intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . In addition . . . because the trial judge who issues the order that is the subject of subsequent clarification is familiar with the entire record and, of course, with the order itself, that judge is in the best position to clarify any ambiguity in the order. For that reason, substantial deference is accorded to a court's interpretation of its own order. (Citation omitted; internal quotation marks omitted.) *Bauer* v. *Bauer*, supra, 131.

Additionally, "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . [T]he trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *DeMattio* v. *Plunkett*, 199 Conn. App. 693, 711–12, 238 A.3d 24 (2020).

Here, the trial court expressly found that the plaintiff's claim that he believed he was required to maintain insurance only up to an annual premium cost of $3500 was not credible. We will not second-guess the court's credibility determination.

Furthermore, we agree with the trial court that because its November 18, 2008 order did not include the $3500 limitation, that limitation was eliminated when the total amount of life insurance that the plaintiff was required to maintain doubled from $900,000 to $1.8 million. To the extent that the 2008 order created an ambiguity with respect to the maximum required insurance premium, Judge Axelrod's interpretation of his own order is not manifestly unreasonable. That is particularly so given that the amount of required insurance was doubled in the 2008 order. It is certainly reasonable that the court would not expect the $3500 limit to still be in place given that the defendant would be required to purchase substantially more insurance at a time when he was nine years older than he was when the limit was put in place. Indeed, the plaintiff's conduct in maintaining insurance with annual premiums far in excess of the prior $3500 limitation also suggests that it was objectively reasonable for the court to conclude that the premium limitation did not survive the insurance increase. Accordingly, the trial court did not err in holding that the $3500 annual premium limitation was eliminated when it amended the total amount of required insurance in 2008.

II

The plaintiff next argues that the court erred by requiring him to refrain from private piloting until he put the required amount of life insurance in place without an exception for private piloting, and, with respect to the mortgage alternative, that the trial court exceeded its equitable authority in imposing that condition to protect the integrity of its earlier judgment. We conclude that both issues are moot.

The following additional facts inform our conclusion. In the plaintiff's brief, he states that after the June 14, 2019 orders, in addition to the Lloyd's of London policy, he "secured three accidental death policies in different amounts, totaling an additional [$1.8 million], that all included piloting." The plaintiff explained that "[t]he net effect of these four policies is as follows: if [the plaintiff] dies of causes other than an accident, the defendant receives [$1.8 million] from the Lloyd's policy, if he dies in an accident while he is not piloting a plane . . . the defendant [can] collect under all four policies and receive [$3.6 million] in life insurance, and if he dies in an accident while piloting an airplane, she receives the [$1.8 million] from the three accidental death policies."

"Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Wilcox* v. *Ferraina*, 100 Conn. App. 541, 547–48, 920 A.2d 316 (2007).

The combined effect of the plaintiff's current life insurance policies meets the requirements of the amended separation agreement, and, therefore, the plaintiff is no longer subject to the alternative conditions imposed by the June 12, 2019 orders. Accordingly, the plaintiff's claims challenging the propriety of those orders are moot.

The June 14, 2019 orders are affirmed.

In this opinion the other judges concurred.

[1] The plaintiff is an executive at BNP Associates, Inc., which provides specialized consulting services for major airports. He owns a private aircraft, and he uses it to commute to and from work. He testified that he flies it 10 to 30 times per month and, in 2018, he spent approximately 250 hours engaged in private piloting.

[2] The court exercised its discretion not to enter a contempt finding "in view of the plaintiff's track record in paying alimony, although the court is entering orders that it could have entered under a contempt finding."